**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 14-69-SDD-EWD |
| WILBERT MATHES | |

### RULING

This matter is before the Court on the *Motion for Judgment of Acquittal or, Alternatively, for a New Trial*[1] filed by Defendant, Wilbert Mathes. The Government has filed an *Opposition*[2] to this motion. The Defendant was tried by a jury and found guilty of the following counts: Count 1, conspiracy to possess and possession with the intent to distribute 500 grams or more of cocaine; Counts 2 and 3, distribution of cocaine; Count 5, possession with intent to distribute 500 grams or more of cocaine; and Counts 11, 15, and 16, unlawful use of a communication facility.[3] For the reasons which follow, the Defendant's motion shall be denied in all respects. Oral argument is not necessary.

**I. BACKGROUND**

The evidence at trial established that the Defendant was the leader of a drug trafficking organization in Baton Rouge, Louisiana. The Defendant had multi-kilogram quantifies of cocaine transported to Baton Rouge from a supplier in Houston, Texas to be sold by himself, his brother, and other participants. The evidence admitted at trial

---

[1] Rec. Doc. No. 375.
[2] Rec. Doc. No. 386.
[3] Rec. Doc. No. 374.
36894

established that the Defendant often used Gravs Custom Wheels and Accessories to conduct his drug trafficking business. Defendant's jury trial began on September 19, 2016, and the jury returned a verdict of guilty on all counts on September 22, 2016. At trial, the jury heard the testimony of 18 witnesses, including eight members of law enforcement, five co-defendants/co-conspirators, a courier for the Houston supplier, and Defendant's own mother and uncle. The jury reviewed 22 exhibits and listened to over 35 recorded phone conversations. The jury returned a verdict of guilty on all counts.

## II.  LAW & ANALYSIS

### A.  Motion for Judgment of Acquittal

A motion for acquittal and a motion for a new trial are subject to different standards. A motion for acquittal is governed by Rule 29, and it allows a court to enter a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction."[4] In evaluating the sufficiency of the evidence, the Court must affirm the verdict "if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict."[5]

The Defendant contends that the evidence relating to the Defendant's participation in a conspiracy "only raised speculative inferences of Mr. Mathes' guilty scienter." Defendant argues that the evidence presented as to Counts 2, 3, and 5 is likewise nothing

---

[4] Fed.R.Crim.P. 29(a).
[5] *United States v. Baker*, 544 F.Supp.2d 522, 528 (E.D. La. 2008)(quoting *United States v. Burns*, 162 F.3d 840, 847 (5th Cir.1998), quoting *United States v. Myers*, 104 F.3d 76, 78 (5th Cir.1997))(internal quotation marks omitted).
36894

more than speculation and required the jury to make an assumption that the Defendant had knowledge of drug trafficking in certain instances. As to Counts 11, 15, and 16, the unlawful use of communications facilities, Defendant argues that he was convicted solely on the testimony of witnesses who provided only generalized statements about their alleged conversations with the Defendant.

The Government has recounted the testimony and evidence introduced and considered by the jury in this case on each count and argues that the evidence was more than sufficient to sustain the jury's verdict of guilty on all counts. The Court will review the evidence relating to each count.

1. Count One

The Defendant's claim that the evidence relating to Count 1 is too speculative to support a guilty verdict is invalidated by the plethora of evidence introduced on this count. Several witnesses testified about the Defendant's leadership and participation in this drug trafficking conspiracy. Broderick Mathes, Defendant's brother, testified that he obtained the cocaine to sell from the Defendant and that they later pooled their money together to purchase large quantities of cocaine from their Houston, Texas supplier. Broderick also testified that the Defendant was often present when drug deliveries came in and that he and Defendant received several deliveries of cocaine from Houston in the Land Rover shown to be previously owned by the Defendant but was later registered in the name of co-defendant Marcus Thornton. Numerous phone calls between the Defendant and Broderick Mathes were played for the jury which revealed the manner in which Broderick would obtain and sell cocaine for the Defendant, who would later come pick up the money from those sales.

36894

Robert Williams, owner of Gravs body shop, testified that he allowed Broderick and the Defendant to store cocaine at his shop. Williams even testified that he was present during one multi-kilogram delivery. Williams also identified the Land Rover as belonging to the Defendant because Williams recalled having previously installed a stereo in the Land Rover. Williams also testified that he witnessed Broderick and the Defendant remove cocaine from the Land Rover.

Michael Behnkie testified that he made two deliveries of cocaine to Baton Rouge and was arrested, en route to his third delivery, in the Land Rover registered to Marcus Thornton. At the time of his arrest, Behnkie was transporting 11 kilograms of cocaine in the Land Rover's secret compartment. Behnkie testified that he had delivered a cocaine shipment to Gravs in the Land Rover.

Joel Leggins also testified that all of the cocaine he sold during this conspiracy came from the Defendant, even though he would occasionally pick up the cocaine from Broderick Mathes, whom he called "the Barber." Leggins testified that, when he picked up drugs from Broderick, it was at the direction of the Defendant. Lamont Jackson, a customer of Leggins, testified that he purchased cocaine from Leggins on several occasions and that Leggins obtained all of the cocaine from the Defendant. One time in particular, Jackson complained to Leggins about the quality of the cocaine, and Jackson testified that he offered to buy the Defendant a steak dinner for fixing the problem. Telephone calls relating this incident were played for the jury.

There is simply no question that the Government proved the Defendant's participation in this drug trafficking conspiracy beyond a reasonable doubt. The testimony and evidence presented on this count was far more than speculative; rather, eye

witnesses and co-conspirators testified under oath about specific acts of direction and/or participation of the Defendant in trafficking cocaine. The jury's guilty verdict on Count 1 is fully supported by the evidence in the record.

2. Count Two

At Defendant's trial, Leggins testified that the Defendant gave him the green box containing cocaine that Leggins sold to CS on March 16, 2011. Marcus Thornton testified that he gave the green box to the Defendant but did not know what it contained. However, as the Government points out, Thornton was impeached with his factual basis regarding this issue. Special Agents Sandy Norton, Christian Ebner, and Page Devall all testified that they had viewed pole camera footage showing the Defendant's orange Camaro with two occupants pulling up in front of Thornton's house and Thornton handing the green box to the driver of the Camaro. Special Agent Devall testified that the Defendant was the driver of the orange Camaro on this date. Thus, for these reasons and the same reasons set forth by the Court in denying the Rule 29 motion at trial on this count, the Court finds that the evidence fully supports the jury's verdict of guilty on Count 2.

3. Count Three

On Count 3, there was testimony by Task Force Officer Paul Marionneaux that intercepted telephone calls had alerted the DEA that Leggins would be distributing cocaine on June 3, 2011 to Damond Lockett. As part of this investigation, the DEA set up surveillance at various locations with Marionneaux dispatched to perform surveillance at Leggins' house. Marionneaux observed the Defendant arrive at Leggins' house in his black truck. The Defendant went into Leggins' house and stayed for around thirty minutes before he and Leggins left together in the black truck. A few minutes later, the Defendant

dropped Leggins off at his house and left. Minutes later, Leggins was observed leaving his house and meeting Lockett at the Rock Shop parking lot to deliver the drugs to Lockett. Leggins' own testimony confirmed that he got the cocaine from the Defendant and delivered it to Lockett on this date. Lockett was stopped by the police shortly after making this purchase, and a subsequent search of the vehicle revealed the cocaine that had just been sold by Leggins. There is ample evidence to support the jury's guilty verdict on Count 3.

    4. <u>Count Five</u>

Pursuant to a federal search warrant, the home of Joell Leggins was searched on July 6, 2011 and over 800 grams of cocaine was discovered. Task Force Officer Jason Thompson testified at trial that, while conducting this search, he discovered a Krispy Kreme donut box containing over 800 grams of cocaine under Leggins' bed. Leggins testified that the Defendant was the source of this cocaine and, in fact, that all cocaine Leggins had ever distributed had been provided by the Defendant either directly or, at least once, through Broderick Mathes. Leggins testified that he had been directed by the Defendant to go pick up this cocaine from Broderick the day before the search. Leggins complied and was holding this cocaine for the Defendant. Additionally, Broderick Mathes testified that he only provided cocaine to Leggins when directed to do so by the Defendant. As the Court stated on the record in denying Defendant's Rule 29 motion on Count 5, the testimony was clear that Leggins stated he got this cocaine from Broderick, and Broderick testified that his only source of cocaine was the Defendant. The evidence supporting the jury's verdict of guilty on Count 5 was more than sufficient.

5. <u>Counts Eleven, Fifteen, and Sixteen</u>

The guilty verdicts on these counts are also easily supported by the evidence presented at trial. As discussed previously, Leggins testified that he had sold cocaine to Jackson, who also testified that he purchased the cocaine from Leggins and had complained about its quality. The call placed by Jackson to Leggins on April 22, 2011 evidences Jackson's complaint to Leggins about the quality of the cocaine. Leggins arranged to pick up the cocaine and have it tested. Following the testing, Leggins called the Defendant, identified as call session number 752, and advised that the cocaine quality was "not quite right" but that Jackson had exaggerated the amount of loss in converting to crack cocaine. In this call – Count 11 - the Defendant clearly instructed Leggins to take the drugs back to Jackson and tell him to "have a good day".

Counts 15 and 16 involve a series of intercepted telephone conversations on May 24, 2011 and June 3, 2011 between Broderick and the Defendant. Broderick testified that the Defendant would often leave some cocaine at Gravs for Broderick to sell, and the Defendant would later return to Gravs to pick up the proceeds. On May 24, 2011, evidence showed that the Defendant had sent someone to the shop to pick up cocaine, but Broderick was not there. The Defendant called and instructed Broderick to get back to the shop because he had a customer there. Although no drug transaction took place that day, the call was clearly a discussion to further the drug trafficking scheme. A subsequent call identified as session number 1050 reveals that Broderick told the Defendant that he had left the shop but would return shortly, and the Defendant then chastised Broderick for his absence because "you make your damn money at the shop". Broderick testified that this conversation was referring to drug proceeds.

36894

Page 7 of 10

On June 3, 2011, in call session number 2716, the Defendant called Broderick to ask if he had sold his cocaine and had money to make another purchase. Broderick responded that he didn't have the money but would have it the next day. The Defendant responded that he would "hold on 'til then". Broderick testified that the Defendant was going to wait until Broderick had the money together before placing another order for a multi-kilogram cocaine delivery from the Houston supplier.

For the reasons set forth above, and for those given by the Court in its oral ruling denying the Rule 29 motion on most of these counts at trial, the Court finds that the guilty verdicts rendered by the jury on Counts 11, 15, and 16 are fully supported by the record.

Considering all of the counts and corresponding evidence, the Court finds that the evidence admitted at trial meets the standard for legal sufficiency. Indeed, the Court evaluated many of the same arguments made by defense counsel when he moved for judgment of acquittal pursuant to Rule 29 before the matter went to the jury.[6] The jury heard the testimony of witnesses and considered all of the evidence introduced in this case before deliberating and returning guilty verdicts. The Defendant has failed to support his claim that there was insufficient evidence to support the jury verdicts on these specific counts. Accordingly, the Rule 29 *Motion for Judgment of Acquittal* is DENIED.

### B. Motion for New Trial

A motion for new trial is made pursuant to Federal Rule of Criminal Procedure 33 and allows the Court to "weigh the evidence and consider the credibility of witnesses".[7] As explained by the Fifth Circuit in *United States v. Robertson*:

---

[6] The Court adopts by reference the oral reasons given at trial for the denial of the Defendant's Rule 29 motion for acquittal.
[7] *United States v. Fuchs*, 467 F.3d 889, 910 (5th Cir. 2006).
36894

> According to the Federal Rules of Criminal Procedure, a court on motion of a defendant may grant a new trial if required in the interest of justice. Fed.R.Crim.P. 33. The trial judge may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial. No such discretion is allowed when the court decides a motion for a judgment of acquittal. Indeed, the court must view the evidence in a light most favorable to the verdict. In effect, the court assumes the truth of the evidence offered by the prosecution. Consequently, a review of a motion for new trial is reviewed under a more lenient standard than a motion for judgment of acquittal.[8]

Thus, a Rule 33 motion for a new trial allows the trial judge more latitude in evaluating the quality of the evidence, but it cannot serve as a vehicle for an outright acquittal as can a Rule 29 motion for acquittal. Even so, "[t]he decision to grant a new trial is within the discretion of the trial court, which should be exercised with caution and invoked only in exceptional cases."[9]

In arguing for a new trial, the Defendant contends that the Court wrongfully admitted evidence in this case and in wholesale fashion directs the Court to "review the appropriate law on each point identified by this motion" as he has "made the record for the reasons why he thought certain evidence was improperly admitted".[10] The Defendant fails to identify a single item of allegedly wrongfully admitted evidence or the legal justification for his argument.[11] The Court declines this non-specific invitation and, to the extent that the Defendant rests on the arguments he made at trial, the Court affirms the

---

[8] 110 F.3d 1113, 1117 (5th Cir.1997)(citations omitted).
[9] *United States v. Ngari*, 828 F.Supp.2d 825, 829 (M.D. La. 2011)(citing *United States v. Scroggins*, 485 F.3d 824, 831 (5th Cir. 2007).
[10] Rec. Doc. No. 375-1, p. 3.
[11] Although Defendant offered supplemental briefing on his claim of improperly admitted evidence if "helpful," it was incumbent upon movant to support his motion and not simply make vague references to trial objections. Rec. Doc. No. 375-1, p. 3.
36894

factual and legal reasons given at trial to admit such evidence. Accordingly, the alternative *Motion for New Trial* is DENIED.

## III. CONCLUSION

The Court finds that the Defendant has failed to satisfy the standard for relief under either a motion for judgment of acquittal or a motion for new trial. As detailed above, the evidence on each count was sufficient to sustain a guilty verdict such that the Defendant is not entitled to a judgment of acquittal. With respect to a new trial, the Defendant presents utterly no persuasive argument or evidence of adverse effects on his substantial rights. Viewing the evidence in the light most favorable to the verdict, and after evaluating and weighing the evidence and credibility of witnesses considered by the jury, the Court finds that a new trial is not warranted.

Therefore, the *Motion for Judgment of Acquittal or, Alternatively, for a New Trial*[12] filed by Defendant Wilbert Mathes is hereby DENIED in all respects.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on January 10, 2017.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[12] Rec. Doc. No. 375.

36894